THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CAREY CURRY, Defendant-Appellant.

Second District    No. 2—89—1371

Opinion filed February 26, 1992.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

A jury found the defendant, Carey Curry, guilty but mentally ill of the crimes of attempted murder (Ill. Rev. Stat. 1981, ch. 38, pars. 8—4(a), 9—1(a)), armed violence (Ill. Rev. Stat. 1981, ch. 38, par. 33A—2) and aggravated battery (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(a)). The trial court convicted him of the attempted murder charge and sentenced him to 18 years' imprisonment. He appeals the dismissal of his post-conviction petition under section 122—6 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 122—6). He contends that the circuit court should have conducted an evidentiary hearing regarding his claim that he was denied the effective assistance of counsel. The issue on appeal is whether the transcript of the trial showed trial counsel was ineffective for failing to advise the psychiatrist of the date of the commission of the crime and for failing to cite the correct law regarding the admissibility of the psychiatrist's opinion. We affirm.

The offenses arose from an incident on October 14, 1982, in which defendant shot Porter Robbins on a street in Waukegan. On January 10, 1983, the trial court found defendant mentally unfit to stand trial, but it granted the petition showing recovery on July 21, 1983. Trial commenced on July 25, 1983. Defendant pleaded not guilty by reason

of insanity and by self-defense. After the eyewitnesses testified to the circumstances surrounding the shooting and whether Robbins held a knife, defendant testified on his own behalf. Defendant testified that Robbins had threatened him with a knife over a period of two days.

Defendant also testified that he was not taking his medication at the time of the shooting. At the time of trial, he was taking around 6,000 milligrams of Thorazine and Cogentin. He had been institutionalized 12 times in the past for mental illness. He had been released for a year and a half, and when his prescriptions were depleted he did not bother to refill them. On cross-examination, defendant said he knew what he was doing when he shot Robbins; defendant shot in self-defense before Robbins could reach him with a knife. On redirect examination, defendant denied that he had ever been mentally ill and stated that he refused his medication because he did not think he needed it; he considered the medication to be an attempt to make him into a zombie.

During a break in the testimony, the prosecutor asked the court for a two-minute recess to talk to a rebuttal witness. The court also granted her time to talk to Dr. Goldman, the psychiatrist, who had examined defendant on November 1, 1982. After the recess, the prosecutor moved to exclude him as a witness, stating:

> "With all respect to the doctor, he had asked me, right now, what was the date of the date [sic] of the occurrence. So, I am presuming that he did not know it was October 14th. I told him it was a few weeks before that. He said that he would not be able to give an opinion as to insanity on the date of October 14th, 1982, but that when he examined him on or about the 1st of November, 1982, he would have that opinion.
>
> I think that the case law is pretty ample, in *People versus [Dunigan* (1981) 96 Ill. App. 3d 799], 421 Northeast 2d 1319, it clearly states that the day before, day after, or two weeks after is not significant, that there has to be an opinion as to sanity or insanity on the day of the offense.
>
> So, I'm going to ask that the witness not be called."

The trial court stated that it had a problem with the defense trying to imply that defendant was legally insane on the date of the occurrence based on a determination on a later date, but it had no problem with evidence suggesting defendant was mentally ill. Defense counsel stated he would "stick to mental illness" for which he was planning to tender a jury instruction. The court granted a prospective evidentiary ruling which it termed as an order *in limine*: if Goldman would not give an opinion that defendant was insane on the date of the oc-

currence, then he could not testify to insanity on later dates. If Goldman would testify regarding mental illness at the time of the occurrence, he could testify as to mental illness on later dates.

Dr. Goldman testified that he had examined defendant on a couple of occasions over the three years prior to the offense. He diagnosed defendant at those times as suffering from schizophrenia, which is manifested by a severe disorder of thought, a lack of logical consequences, delusional thinking, and a lack of normal emotional responses. It is a chronic illness that continues for many years. Defendant was prescribed as large a dose of medication as Goldman had ever seen, including 80 milligrams of Haldol and 2,000 milligrams of Thorazine per day. Defendant had been admitted 12 times to the Department of Mental Health, and Goldman reviewed those records.

During the November 1, 1982, examination, defendant was too uncooperative to give his mental history. Goldman then testified that "I, in all honesty, must say that I cannot be certain of what his mental state was in October. I can only be certain of what it was in November, when I saw him." Goldman did say that in October defendant was suffering from schizophrenia. When defendant took his medicine he was rational, although he still lacked insight. Alcohol also accentuated defendant's delusional thinking. In Goldman's opinion, defendant had not been taking his medicine around November 1.

Defendant was found guilty but mentally ill and convicted of attempted murder. His counsel filed neither a written post-trial motion nor a notice of appeal. Defendant subsequently filed a post-conviction petition in which he claimed that trial counsel was ineffective. An attorney was appointed to represent him in the post-conviction proceedings. The circuit court dismissed the petition without an evidentiary hearing.

■ On appeal, defendant contends that trial counsel was ineffective because he did not inform his expert witness of the date of the commission of the offense and because he failed to cite the relevant authority regarding the expert witness' opinion. Defendant also contends that trial counsel should have distinguished the holding of *Dunigan*. In *Dunigan*, the trial court excluded a lay witness' recollections of the defendant which occurred 10 and 16 months after the crime. (*People v. Dunigan* (1981), 96 Ill. App. 3d 799, 820.) Only the insanity occurring during a crime can excuse the defendant, not insanity before or after the crime. (96 Ill. App. 3d at 820.) The *Dunigan* court also cited cases in which psychiatric examinations taken four to six months after the crime were too remote to be probative of defend-

ant's state of mind the day of the commission of the offenses. 96 Ill. App. 3d at 820.

In contrast, defendant now cites *People v. Zemola* (1972), 9 Ill. App. 3d 424, 429, and the cases cited in it, to show that a doctor could testify regarding a defendant's past state of mind based on subsequent examinations. We agree with the *Zemola* court that most opinions of insanity delivered during trial are based on subsequent examinations. *Dunigan* is easily distinguishable because Dr. Goldman examined defendant only two weeks after the crime as well as a number of times before the crime, and the level of schizophrenia, a chronic condition, was affected by defendant's failure to take his medication. Had Dr. Goldman an opinion of defendant's sanity the day of the offense, he could have given it based on the foundation provided to the court.

The problem with defendant's argument, however, is that he does not conform it to the test of *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and *People v. Albanese* (1988), 125 Ill. 2d 100, 106. Defendant must show that "but for" his counsel's errors, the results of the trial would have been different. If there is a lack of sufficient prejudice to the defendant, the claim of ineffective assistance will be denied. (*Albanese*, 125 Ill. 2d at 106.) Defendant does not explain how he was prejudiced by his counsel's failure to distinguish *Dunigan*. Defendant's witness stated that he had *no* opinion regarding defendant's sanity on October 14, 1982. Even if counsel had distinguished *Dunigan*, the results of the trial would be the same because the examining psychiatrist would offer no relevant opinion of defendant's sanity.

In fact, the record does not show that the trial court's prospective evidentiary ruling was ever put into play. On cross-examination, Goldman repeated that he did not have an opinion of defendant's sanity on October 14. At the time of his November 1 examination, Goldman knew the date of the commission of the offense, which was two weeks prior. Goldman again would not venture an opinion whether defendant could appreciate the wrongfulness of his behavior on October 14 or whether he was able to conform his conduct to the requirements of the law.

The prosecutor also adduced that defendant displayed bizarre behavior during the examination. Defendant had not been malingering or trying to pretend he was insane. Defendant was suffering from paranoid schizophrenia on November 1, 1982. He was unable to conceptualize the purpose of the examination or to communicate adequately. The clinical picture of his insanity was clear. Goldman based

his opinion on the examination, defendant's demeanor and behavior, the previous examinations, the review of other medical documents and defendant's response to medication. The fact that defendant had a clear recollection of the events of October 14 would only confirm Goldman's opinion that defendant was acting in a catatonic state. Defendant was mentally ill during the trial and was more mentally ill at the previous time. Defendant's denial of his insanity reflected his lack of contact with reality. If defendant had been drinking, in all probability he would have become increasingly disorganized and unable to conform his behavior to that required by society. On redirect examination, Goldman testified that defendant was currently mentally ill because a normal person would lapse into a coma under the massive doses of anti-schizophrenia drugs defendant was taking. Defendant could not be faking his schizophrenia because of this fact.

■ We include this testimony here because it reveals that the prosecutor adduced all the evidence which could have been excluded by the trial court's evidentiary ruling. Thus, defendant suffered no prejudice from counsel's failure to contest the purported trial error.

Moreover, we are not convinced that the trial court made an error in its evidentiary ruling. The expert witness stated twice that he had no opinion regarding defendant's sanity at the relevant time. Thus, the facts upon which his opinion could have been based were irrelevant and could be properly excluded. We do not rule that no psychiatrist could extrapolate a subject's insanity on a certain date by noting his prior insanity, his later insanity and a lack of medication, but we note that *this* witness was unwilling to do so. He would not venture an opinion. (See *People v. Taylor* (1971), 1 Ill. App. 3d 1053, 1062.) Thus, we do not see that the trial court erred or that trial counsel erred for failing to correct the court.

Finally, we do not find that trial counsel erred in failing to inform the witness of the date of the offense. Goldman testified that he knew the date of the offense when he examined defendant. Goldman was also informed of the date only four days prior to the trial, as reflected in the transcript of the July 21, 1983, fitness hearing.

For the above reasons, the order of the circuit court of Lake County denying defendant's post-conviction petition is affirmed.

Affirmed.

DUNN and NICKELS, JJ., concur.